UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARY McCLENEGHAN, | CASE NO. 12cv5600-BHS-JRC |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,[1] | Noting Date: August 9, 2013 |
| Defendant. | |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). Plaintiff has filed an Opening Brief (*see* ECF No. 12) and defendant has filed a response (*see* ECF No. 16).

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

After considering and reviewing the record, the Court finds that although plaintiff complains that over one hundred pages of records exist that were not reviewed in the opinion credited by the ALJ, plaintiff fails to direct the Court to any opinion regarding any functional limitation on plaintiff's ability to work or any significant, probative evidence within the specified records.

Similarly, although plaintiff complains that the ALJ failed to evaluate properly the opinions of her treating doctors, she fails to identify an opinion that was rejected that supports her claim of disability.

Because an ALJ is not "required to believe every allegation of disabling pain," *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A)), and because the ALJ provided clear and convincing reasons for his failure to credit fully plaintiff's testimony and allegations, this matter should be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff, MARY McCLENEGHAN, was born in 1967 and was forty years old on the alleged date of disability onset of November 25, 2007 (*see* Tr. 136). Plaintiff has completed two years of community college and has obtained an Associate's degree (*see* Tr. 43).

In 1999, plaintiff worked at Puget Sound Shipyard as a cafeteria worker (*see id.*). From 2000 until 2002, plaintiff worked at Ketsett Community Resources as "an advocate and a facilitator" (*see* Tr. 45). At this position, she "taught people to go back to do like resumes and 60 second sales help, and get work" (*see id.*). Plaintiff last worked in 2007

for Olympic College part time (*see* Tr. 44). Plaintiff testified as to the reason that she did not look for work in the area in which she wanted to work after she graduated: "I ended up getting worse to where my advocate[] at DSHS told me that I needed to go for Social Security because I was going in and out of the emergency room and having medical issues" (*see* Tr. 47).

Plaintiff had at least the severe impairments of obesity and cervical degenerative disc disease (*see* Tr. 27). The ALJ noted that in May, 2009, plaintiff weighed 232 pounds, with a height of 64 inches (Tr. 28 (*citing* Ex. 16F/3)). As indicated by the ALJ, this body weight for plaintiff correlated to a body mass index ("BMI") of 39.8, indicating obesity. (*see* Tr. 28; *see also* http://www.nhlbi.nih.gov/guidelines/obesity/BMI/bmicalc.htm (last visited July 15, 2013)).

Plaintiff's November, 2007 MRI of the cervical spine indicates a mild to moderate broad-based disc bulge at C5-6 causing mild canal stenosis, which did "not appear to narrow with neural foramen significantly;" and mild degenerative disease at several other levels (*see* Tr. 280-81). In July, 2008, plaintiff had an additional scan (see Tr. 354-55). Dr. Ruben Krishnananthan, M.D. indicated his clinical impression as follows:

1. Altered alignment with slight kyphosis at C5-C6, unchanged since the prior study.
2. No marrow edema to suggest acute fracture.
3. Disc degenerative change at C4-C5, C5-C6, and C6-C7 without focal nerve root compromise, unchanged since the prior study.

(Tr. 355).

The record indicates plaintiff's subjective history of present illness as follows:

[Plaintiff] 40 year old female Presents with the chief complaint of neck pain with radiating left arm pain. The history is present illness began November of 07 with insidious onset. The patient developed such pain and weakness that she was hospitalized for 4 days at Harrison Hospital. By the patient's report, she was worked up for a stroke which was negative. The patient was discharged and no further workup has been performed. Her symptoms include numbness and tingling in the fourth and fifth fingers of the left hand pain in her cervical spine and radiating pain from the low back into the hand. Pain is worse with neck rotation. She is right-handed and is currently unemployed. She has had no specific treatment of her condition. There is no history of trauma. Prior to November of 07 the patient was doing well and had no significant hand numbness.

(Tr. 317).

At the time of the hearing, plaintiff was living with her daughter, who was ten years old at that time (*see* Tr. 56). However, plaintiff testified that her mother and her friends come over to help her clean her house two or three days a week, and "sometimes four" days a week (*see id.*).

PROCEDURAL HISTORY

On May 20, 2008, plaintiff filed an application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act[2] (*see* Tr. 136-43). The applications were denied initially and following reconsideration (*see* Tr. 77-83, 86-88, 96-97). Plaintiff's requested hearing was held before Administrative Law Judge M.J. Adams ("the ALJ") on April 13, 2010 (*see* Tr. 39-70). On May 27, 2010, the

---

[2] Plaintiff also filed a previous set of applications in 2006, however, her 2006 applications were denied at the initial level and were not pursued by plaintiff (*see* Opening Brief, ECF No. 12, p. 1; Tr. 132-35).

ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 22-38).

On May 3, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-5). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in July, 2012 (*see* ECF Nos. 1, 3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on September 25, 2012 (*see* ECF Nos. 9, 10). In plaintiff's Opening Brief, plaintiff asserts that she has raised the following issues:    (1) whether or not the ALJ erroneously determined that plaintiff's severe cervical degenerative disc disease and left sided cervical radiculopathy did not meet 1.04A of the Listings of Impairments; (2) whether or not the ALJ erroneously failed to consider combined effects of plaintiff's impairments; (3) whether or not the ALJ erroneously failed to discuss medical evidence from plaintiff's treating doctors and failed to provide specific and legitimate reasons for rejecting their findings and opinions; (4) whether or not the ALJ erroneously determined plaintiff's RFC; (5) whether or not the ALJ erroneously failed to include all of plaintiff's limitations into the hypothetical questions presented to the vocational expert; and (6) whether or not the ALJ erroneously found that plaintiff could perform her past relevant work as a resume developer writer and a cafeteria worker (*see* ECF No. 12, pp. 6-7).

Plaintiff has not challenged specifically the ALJ's assessment of her credibility and testimony (*see* ECF No. 12).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled pursuant to the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v.*

*Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court must independently determine whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-

*46; *see also* 28 U.S.C. § 2111; *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

<u>DISCUSSION</u>

1. **Whether or not the ALJ properly evaluated plaintiff's allegations and credibility.**

Although plaintiff has not challenged specifically the ALJ's review of her credibility, this finding forms much of the basis of the ALJ's decision. As discussed briefly below, the Court concludes that the ALJ's assessment of plaintiff's allegations is supported by substantial evidence in the record as a whole.

When failing to credit fully plaintiff's allegations, the ALJ relied on inconsistencies between plaintiff's allegations, and her activities and treatment record (*see* Tr. 31). In general, the ALJ noted the following activities of plaintiff:

> [Plaintiff] is able to perform routines of self-care, such as bathing, dressing, caring for her hair, and feeding herself, without the assistance of others (internal citation to Ex. 10E/3). On a typical day, the claimant stated that she is able to help her 10-year old daughter get ready for school, wash dishes, vacuum, do laundry, prepare food for lunch, dust, go to the store to shop, pick up her daughter from school, prepare food for dinner, wash dishes, and then help her daughter get ready for bed (internal citation to Ex. 10E/2). The claimant added that she takes breaks in between each of these daily activities (internal citation to Ex. 10E/2). The record shows that the claimant goes out on a daily basis, is able to drive a vehicle on an unrestricted driver's license, and does not need someone to accompany her (internal citation to 10E/5).

(Tr. 31; *see also* Tr. 56).

The ALJ also provided some specificity to his findings. For example, the ALJ indicated specifically that plaintiff "wrote that she uses a cane 5 days per week and a

wheelchair approximately twice per week, or when she goes out for more than one hour of walking or standing" (*see id.*). However, the ALJ also noted that "neither of these assistive devices has been prescribed by a physician" (*see id.*). When reviewing the lay testimony provided by plaintiff's mother, the ALJ noted that plaintiff's mother did not check the box to indicate that plaintiff used a wheelchair (*see* Tr. 32, 251).

In addition, although plaintiff alleged disabling limitations, such as an inability to walk for 200 yards without taking a break, the ALJ found that plaintiff's activities were inconsistent with the alleged level of limitations due to physical impairments (*see id.*). Supporting this assessment, the Court notes that when discussing the medical opinion evidence, the ALJ credited the state agency medical consultants' opinions, and noted that Mr. Robbie Perry "noted that a recent physical examination showed that the claimant had a brisk, casual gait with normal strength, tone, sensation and reflexes (*see id.* (*citing* Tr. 474)).

Regarding the ALJ's reliance on inconsistencies between plaintiff's allegations of using a wheelchair and a cane, and her activities, the Court also notes that Dr. McGovern assessed that plaintiff had a normal gait, and also assessed that her stability with respect to her right and left; knee, hip, elbow, lumbar spine, and neck was "stable in all planes" (*see* Tr. 490). Such an assessment does not support the need for a cane. As noted previously, Dr. McGovern also assessed intact muscle strength in the right and left, upper and lower, extremities, trunk and neck (*see id.*). The Court also notes that in October, 2008, plaintiff was assessed as follows: "She walks with a normal gait. She does not use a cane" (*see* Tr. 486). In November, 2008, plaintiff was assessed in the identical manner

(*see* Tr. 483), and again in December, 2008 (Tr. 479), and again in January, 2009 (Tr. 476). The Court also notes that plaintiff has not directed the Court to any contrary evidence other than plaintiff's allegations.

Based on inconsistencies in plaintiff's testimony; the medical evidence; and the relevant record, the Court concludes that the ALJ's failure to credit fully plaintiff's testimony is supported by clear and convincing reasons. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)); *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996).

   2. **Whether or not the ALJ erroneously determined that plaintiff's impairments did not meet 1.04A of the Listings of Impairments**.

Plaintiff contends that she met Listing 1.04A regarding disorders of the spine. Defendant responds, in part, that the relevant Listing requires motor loss, in addition to sensory or reflex loss, and that plaintiff failed to demonstrate any muscle weakness.

Federal regulations include the following regarding disorders of the spine, Listing 1.04:

> Listing 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord. With:
>
> a. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) .  .  .  .

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 10

20 C.F.R. pt. 404, subpt. P, app. 1, 104A.

It is clear that this listing requires motor loss, among other requirements. *See id.* In order to meet Listing 104A, plaintiff must have evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss, described in parenthetical as atrophy with associated muscle weakness or muscle weakness, and sensory or reflex loss. *See id.*

The Court notes that on September 9, 2008, Dr. Tristan McGovern, M.D., examined plaintiff and observed the following regarding plaintiff's musculoskeletal examination:

> Examination of gait-normal.
> Inspection: Leg length symmetrical. Head and neck normal, spine no gross scoliosis or pelvic obliquity, right and left upper extremity **no atrophy**
> Palpation: tender C-spine
> Range of motion: Lumbar range of motion decreased in extension, cervical spine decreased range of motion, full range of motion of right and left ankle and right in left elbow
> Stability: Right and left:, knee, hip, elbow, lumbar spine, neck –stable in all planes
> **Muscle Strength: Right and left: upper and lower extremities, trunk, neck intact**

(Tr. 490 (emphases added)).

Dr. McGovern's final impression and plan were indicated as follows:

> Cervical pain with intermittent numbness of the face and left arm-etiology exact diagnosis is still in question. It is likely multifactorial. Recommend continue nonoperative treatment. We will institute pool therapy for general conditioning and weight loss. We will also obtain a pain management consult. We have given the patient 40 of ocycodone for severe pain which we will attempt to wean off.

(*id.*).

On October 7, 2008, plaintiff's strength was "grossly intact to the bilateral upper extremities," and her neck strength was "intact in all planes" (*see* Tr. 487). Regarding her biceps, triceps, internal rotation, external rotation and supraspinatus, she demonstrated 5/5 strength bilaterally (*see id.*). The plan at that time was for plaintiff to try to get into the pain clinic and to continue water aerobics for generalized conditioning (*see id.*). Examination notes from November 4, 2008 are practically identical to these strength findings from October, 2008 (*see* Tr. 482-84). On December 4, 2008, plaintiff again demonstrated intact and 5/5 strength in these noted areas (*see* Tr. 478-80). Plaintiff indicated that she was not a candidate for surgery; that none of the treatments provided had resulted in pain relief; and she refused the "therapeutic and diagnostic lidocaine and steroid injection to the shoulder" (*see* Tr. 480). Plaintiff's treatment record from January, 2009 is nearly identical to the noted records, and again includes observations of intact strength and 5/5 bilateral strength (*see* Tr. 475-77).

Although plaintiff describes some of her treatment record, including some sensory loss, and subjective reports of pain, she failed to point to any evidence of motor loss (*see* ECF No. 12, pp. 10-11). For this reason, and based on the relevant record, the Court concludes that plaintiff's argument that she met Listing 1.04A is not persuasive.

Subsequently in her brief, plaintiff argues that a medical expert should have been retained in order to determine if the combined effect of her obesity, cervical degenerative disc disease, left-sided cervical radiculopathy, chronic pain, diabetes mellitus and asthma medically equaled Listing 1.04A (*see* Opening Brief, ECF No. 12, p. 13). However, plaintiff has not demonstrated any ambiguity in the record.

In addition, plaintiff has failed to direct the Court to any additional evidence that reasonably could form the basis for a modification of the State Agency consultants' finding that plaintiff's impairments did not medically equal a Listed impairment. Although plaintiff indicates that additional treatment records were entered into the record, and cites generally to Exhibits 10F, 11F, 15F-18F, the simple fact that additional evidence exists does not demonstrate any error in the ALJ's decision and does not demonstrate that the decision that plaintiff's impairments did not meet or medically equal the severity requirements of the Listings would have been different had these over one hundred pages of records been reviewed explicitly.

A updated medical opinion may be required if additional evidence forms the basis for a modification of the State agency consultant's finding regarding equivalence to the Listed Impairments, however plaintiff has not demonstrated that such is the case here. *See* SSR 96-6p, 1996 SSR LEXIS 3. According to Social Security Ruling ("SSR") 96-6p, an updated medical opinion is required when "additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." *Id.* at *9-*10.

Based on its plain language, this ruling does not appear to apply, as it is apparent that neither the ALJ nor the Appeals Council was of the opinion that this evidence might have changed the state agency medical consultants' finding regarding equivalency (*see* Tr. 1, 31-32). Perhaps more importantly, plaintiff has not directed the Court to any

evidence, much less evidence subsequent to the state agency consultants' opinions, that demonstrates any motor loss, atrophy or muscle weakness. In light of the large amount of information discussed already by the Court demonstrating 5/5 and intact strength, and given the fact that this information is within the treatment record of which plaintiff complains was not reviewed explicitly, the Court does not find plaintiff's argument to be persuasive (*see* Tr. 475-77, 478-80, 482-84, 487).

Similarly, plaintiff's conclusory argument without citation that "the longitudinal history of showing the extent of treatment that [plaintiff] had received in an effort to alleviate the chronic pain was not reviewed by a medical consultant and the record showed that her medical condition had worsened" is unpersuasive (*see* ECF No. 12, p. 13). The Court notes that the one hundred pages cited by plaintiff includes an assessment at physical therapy that plaintiff's "neck and back pain symptoms had been responding well to shallow-water core stabilization, strength, flexibility, and conditioning exercise" (*see* Tr. 501). Plaintiff has not directed the Court to any evidence demonstrating that plaintiff's functional capacity had worsened significantly.

Although plaintiff contends that she was prescribed Methadone for pain, and that she was suffering from side effects that could not be alleviated, there is no citation to the medical record to support this assertion (*see id.*, pp. 3, 13-14; *see also* Tr. 440, 443, 448, 475, 478, 482, 488, 494, 496, 505, 512, 518, 523). The Court notes that on September 16, 2008, plaintiff reported symptom relief from her medications (*see* Tr. 503). No side effects or qualifications to that statement are noted (*see id.*). Although the treatment record contains medications prescribed for pain, the Court has not been directed to any

treatment report that included notations of side effects affecting plaintiff's ability to perform functional activities.

### 3.  **Whether or not the ALJ erroneously failed to consider combined effects of plaintiff's impairments**.

Plaintiff contends that the ALJ failed to consider whether or not the combined effect of plaintiff's cervical degenerative disc disease and left-sided cervical radiculopathy; right carpal tunnel syndrome diabetes mellitus; and asthma, combined with her obesity, caused her to experience greater pain and limitation than would be expected from the musculoskeletal impairments alone (*see* Opening Brief, ECF No. 12, p. 11). However, the ALJ indicated specifically that he had considered all symptoms and the extent to which they reasonably could be accepted as consistent with the objective medical evidence and other evidence (Tr. 30). Plaintiff has not explained what the specific increased limitations were and how they resulted from her combined impairments.

Plaintiff also contends that there is no indication that the ALJ considered how plaintiff's obesity might have affected her ability to perform her past relevant work. The Court notes that the ALJ found that plaintiff's obesity was a severe impairment (*see* Tr. 27). Furthermore, the ALJ included the following discussion in his written decision:

> Although there is no specific medical listing for obesity, the undersigned has considered the effects of this impairment on each body system included in the listings. The objective medical evidence in the claimant's record does not show that the claimant's obesity is of listing level severity in this instance.

(Tr. 30).

1    The Court also notes that according to Social Security Ruling ("SSR") 02-1p,

2        [An ALJ] will not make assumptions about the severity or functional
3        effects of obesity combined with other impairments. Obesity in
         combination with another impairment may or may not increase the
4        severity or functional limitations of the other impairment. [The ALJ] will
         evaluate each case based on the information in the case record.

5    2002 WL 34686281, 2002 SSR LEXIS 1 at *15.

6        In a paragraph containing a discussion of plaintiff's obesity, the ALJ noted that

7    plaintiff had "been counseled to engage in exercises, conditioning and weight reduction

8    to reduce the symptoms of pain associated with [plaintiff]'s degenerative disc disease"

9    (Tr. 28). Regarding this reference by the ALJ, the Court notes the following November,

10   2008 treatment record from Kitsap Physical Therapy:

11
12       [Plaintiff]'s progress with her aquatic therapy program has been often
         interrupted over the past four weeks, first by symptom exacerbation
13       following trial of deep-water exercise, then by family emergency and her
         own illness, and currently by symptoms associated with kidney stones.
14       [Plaintiff]'s neck and back pain symptoms had been responding well to
         shallow-water core stabilization, strength flexibility, and conditioning
15       exercise. She was steadily expanding and progressing her program,
         demonstrating improving activity tolerance, core stabilization skill, and
16       range of motion. [Plaintiff] is likely to benefit from resumption of her
         aquatic rehabilitation program as resolution of kidney stone issues
17       permits.

18   (Tr. 501).

19       The previous record from physical therapy indicates that other than after

20   performance of scapular retraction, plaintiff experienced symptom relief from aquatic

21   therapy sessions (*see* Tr. 502). It also indicates that plaintiff had "increased her activity

22   tolerance from 25 to 50 minutes of continuous shallow-water (25% weight bearing)

23   aquatic exercise" (*see id.*). In addition, the Court has noted already that plaintiff's

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 16

evaluation at physical therapy included the notation that "relief of symptoms was reported with medication" (*see* Tr. 503).

Based on a review of the relevant record, the Court finds no evidence that the ALJ failed to consider appropriately the combination of plaintiff's symptoms from all of her impairments, including the non-severe ones and including plaintiff's obesity. Regarding plaintiff's obesity, the Court concludes that the ALJ's reference to plaintiff's prescription for exercise, conditioning and weight loss, is supported by substantial evidence in the record as a whole. Furthermore, the Court concludes that the ALJ's implied inference that plaintiff benefitted from her prescribed physical exercise likewise is supported by substantial evidence in the record as a whole.

The ALJ appeared to consider plaintiff's obesity when he limited her to light work and to sitting, standing and/or walking for about six hours in an eight-hour workday, and the other limitations in plaintiff's residual functional capacity ("RFC") (*see* Tr. 30). Plaintiff has not demonstrated that any functional impairment was not assessed that was supported by objective evidence in the record.

4. **Whether or not the ALJ erroneously failed to discuss medical evidence from plaintiff's treating doctors and failed to provide specific and legitimate reasons for rejecting their findings and opinions**.

Plaintiff initially lists as a disputed issue that the ALJ erred in failing to discuss medical evidence from plaintiff's treating doctors, but provides no detailed argument on this point (*see* ECF No. 12, p. 7). Plaintiff asserts in a conclusory fashion that plaintiff's treating orthopedists and health care providers provided findings that are well-supported

by objective medical evidence, yet fails to identify a single finding or provide a single

citation in support of this assertion (*see* ECF No. 12, p. 17). Plaintiff's implication that if

the ALJ had reviewed more thoroughly plaintiff's treatment records he would have found

opinions suggesting greater limitations is not supported by a review of the record.

An ALJ is not "required to believe every allegation of disabling pain" or other

non-exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42

U.S.C. § 423(d)(5)(A)). Even if a claimant "has an ailment reasonably expected to

produce *some* pain; many medical conditions produce pain not severe enough to preclude

gainful employment." *See Fair, supra*, 885 F.2d at 603.  Furthermore, plaintiff is required

to provide specific limitations and references to the record to support her conclusion that

the ALJ failed in his review of the record.  Plaintiff has failed to do so here.

Similarly, although plaintiff complains that records exist that were not reviewed in

the opinion credited by the ALJ, plaintiff fails to direct the Court to any opinion

regarding any functional limitation on plaintiff's ability to work within the one hundred

pages of the additional records.

For the reasons stated, the Court is not persuaded by plaintiff's argument and finds

no error.

5.   **Whether or not the opinion of Mr. Perry, as affirmed by Dr. Hoskins,**
     **provides substantial evidence to support the unfavorable decision**.

As just discussed, the ALJ did not appear to reject any opinions from plaintiff's

treating or examining doctors, *see supra*, section 4. However, plaintiff complains that the

ALJ erred in relying on the opinions of non-examining, state agency medical consultants.

1    Defendant asserts that the opinions of state agency medical consultants are

2    supported by other evidence in the record and that these state agency medical consultants

3    provided substantial evidence in the record for the ALJ's decision (*see* Response, ECF

4    No. 16, pp. 8-10). For the reasons discussed below, the Court agrees.

5    An examining physician's opinion is "entitled to greater weight than the opinion

6    of a nonexamining physician." *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also*

7    20 C.F.R. § 404.1527(d).  A non-examining physician's or psychologist's opinion may

8    not constitute substantial evidence by itself sufficient to justify the rejection of an opinion

9    by an examining physician or psychologist. *Lester, supra*, 81 F.3d at 831 (citations

10    omitted). However, "it may constitute substantial evidence when it is consistent with

11    other independent evidence in the record." *Tonapetyan, supra*, 242 F.3d at 1149 (*citing*

12    *Magallanes, supra*, 881 F.2d at 752).

13

14    According to Social Security Ruling (hereinafter "SSR") 96-6p, state agency

15    "medical and psychological consultant findings about the nature and severity of an

16    individual's impairment(s), including any RFC assessments, become opinion evidence,"

17    and "administrative law judges . . . .  must address the[se] opinions in their decisions."

18    SSR 96-6p, 1996 WL 374183 at *6. These state agency medical consultants, while not

19    examining doctors, "are highly qualified physicians and psychologists who are experts in

20    the evaluation of the medical issues in disability claims under the Act." SSR 96-6p, 1996

21    LEXIS 3 at *4.

22

23    Here, the ALJ noted that in September, 2008 state agency medical evaluator, Mr.

24    Robbie Perry, reviewed plaintiff's record and provided a physical residual functional

capacity assessment (*see* Tr. 31 (*citing* Ex. 14/2)). The ALJ included Mr. Perry's notation

that a recent physical examination showed that the claimant had a brisk, casual gait with

normal strength, tone, sensation, and reflexes (*see id.* (*citing* Ex. 14F/8)). The ALJ

discussed Mr. Perry's opinion regarding plaintiff's RFC and noted that in January, 2009,

state agency medical consulting physician, Dr. Robert Hoskins, M.D., "again reviewed

the claimant's records, including this evaluation, and agreed with the assessment

completed by Mr. Perry" (Tr. 31 (*citing* Ex. 13F/1)). That Dr. Hoskins agreed with Dr.

Perry's assessment regarding plaintiff's RFC is based on substantial evidence in the

record (*see* Tr. 466).

The ALJ next found that Mr. Perry's and Dr. Hoskins' "opinions regarding the

claimant's exertional limitations are supported by the medical evidence in the record"

(*see* Tr. 31-32). The ALJ also found that the state agency medical consultants' opinions

also were consistent with plaintiff's reported daily physical activities, which include[d]

being primary caregiver of her daughter" (*see* Tr. 32). The ALJ gave substantial weight to

the state agency medical consultants' opinions.

The Court already has discussed plaintiff's physical activities and their

inconsistency with plaintiff's allegations of disabling limitations, *see supra*, sections 1

and 3. The Court also has discussed the lack of support for allegations regarding

problems walking and lack of support for motor weakness, *see supra*, sections 1 and 2.

These likewise support the state agency medical consultants' opinions. Plaintiff has failed

to direct the Court to any specific evidence in the objective medical evidence, including

examining physician opinion evidence, contradicting the state agency's opinions (or the ALJ's findings) regarding plaintiff's RFC.

For these reasons, and based on the relevant record, the Court concludes that the ALJ adequately supported his decision to provide substantial weight to the state agency medical consultants' opinions. The Court also concludes that the state agency medical consultants' opinions, in combination with other medical evidence and plaintiff's reports and activities, provide substantial evidence in the record as a whole for the ALJ's RFC, decision, and ultimate determination that plaintiff was not disabled pursuant to the Act.

6. **Whether or not the ALJ erroneously failed to include all of plaintiff's limitations into the hypothetical questions presented to the vocational expert**.

Plaintiff complains that the ALJ failed to include any manipulative limitations in the hypothetical questions presented to the vocational expert and that the expert opined that plaintiff would not be able to perform the job as resume developer writer if she was limited to occasional handling and fingering (*see* Opening Brief, ECF No. 12, p. 19 (*citing* Tr. 69)). Defendant contends that plaintiff did not direct the Court to any medical evidence that demonstrating that plaintiff suffered from manipulative limitations (*see* Response, ECF No. 16, p. 11). Plaintiff did not reply to defendant's contention.

Plaintiff has not directed the Court to any objective evidence or medical opinion evidence that demonstrates the existence of manipulative limitations. In addition, even if plaintiff was precluded from performing the job of resume developer writer, which the Court does not find, plaintiff nevertheless has not demonstrated any error with the ALJ's

finding that she could perform her past relevant work as a cafeteria worker. Therefore, even if the ALJ erred in failing to find manipulative limitations, the error is harmless.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). The Court noted multiple instances of the application of these principles. *Id.* (collecting cases). The court noted that "several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Id.* (citations omitted). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts should review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* (*quoting Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

7.   **Whether or not the ALJ erroneously found that plaintiff could perform her past relevant work as a resume developer writer and a cafeteria worker.**

Plaintiff complains that the ALJ erroneously found that plaintiff could perform her past relevant work as a resume developer writer (*see* Opening Brief, ECF No. 12, pp. 14-

16). She contends that her position as an advocate/ facilitator was not the same as a resume writer (*see id.*, pp. 14-15). Defendant responds that plaintiff made no such argument regarding the position of cafeteria worker, and hence, any error is harmless (*see* Response, ECF No. 16, p. 12). Again, no reply is filed on behalf of plaintiff's position on this point.

Even assuming that plaintiff's argument regarding the position of resume writer is correct, plaintiff has not demonstrated any harm in the ALJ's finding at step four that plaintiff could perform her past relevant work as a cafeteria worker. Therefore, on this issue, plaintiff has not demonstrated any harm.

Plaintiff also contends that the ALJ did not provide an adequate analysis regarding the physical or mental demands of her past relevant work (*see* Opening Brief, ECF No. 12, pp. 15-16 (*citing* SSR 82-62)). Defendant contends that the requisite findings were made by the ALJ in his written decision and by reference to the vocational expert's testimony (*see* Response, ECF No. 16, pp. 12-13).

At step-four in the evaluation process, the ALJ must determine whether or not a claimant's impairment(s) prevents the claimant from doing past relevant work. *See* 20 C.F.R. § 404.1520(f).  If the ALJ finds that the claimant has not shown an incapability of performing past relevant work, the claimant is not disabled for social security purposes and the evaluation process ends.  *See id.*  Plaintiff bears the burden to establish the inability to perform past work. *See Barnhart v. Thomas,* 540 U.S. 20, 25 (2003) (footnote omitted); *Pinto v. Massanari*, 249 F.3d 840, 844, 845 (9th Cir. 2001) (*citing* 20 C.F.R. §§ 404.1520(e), 416.920(d); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990)).

1    Relevant here, Social Security Ruling SSR 82-62 requires factual findings as to (1)

2    the individual's residual functional capacity ("RFC"); (2) the physical and mental

3    demands of the past job/occupation; and (3) that the individual's RFC would permit a

4    return to his or her past job or occupation. *See* 1982 SSR LEXIS 27 at *10. The ALJ

5    made sufficient findings as to plaintiff's RFC (*see* Tr. 30). However, relevant to the

6    second set of factual findings, the Ruling requires detailed information about "strength,

7    endurance, manipulative ability, mental demands and other [appropriate] job

8    requirements . . . ." 1982 SSR LEXIS 27 at *8.

9

10    There is a dearth of testimony from plaintiff regarding her work as a cafeteria

11    worker as she actually performed the job (*see* Tr. 45). Plaintiff worked in 1999 at Puget

12    Sound Shipyard and earned $6300 (*see id.*). She testified that she was "working in the

13    canteen, which is the cafeteria" (*see id.*).

14    As that is the extent of the factual development of the physical and mental

15    requirements for the job of cafeteria worker as plaintiff actually performed it, the Court

16    finds that the ALJ's factual development of this job as actually performed is insufficient.

17    *See* 1982 SSR LEXIS 27 at *8, *10. Because the expertise of the vocational expert

18    cannot cure this deficit of requirements of the job as plaintiff actually performed it, the

19    Court concludes that the ALJ committed legal error and that his finding that plaintiff

20    could perform her past relevant work as actually performed is not supported by

21    substantial evidence in the record as a whole.

22

23

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 24

However, the ALJ also found that plaintiff could perform the job of cafeteria worker as that position generally is performed (*see* Tr. 33). Regarding this factual finding, there is more support in the record.

At plaintiff's administrative hearing, the vocational expert testified that plaintiff's past relevant work as a cafeteria worker was light, semi-skilled work at SVP-3 level (*see* Tr. 67). This information provides information regarding mental requirements and strength requirements, and technically does provide "A finding of fact as to the physical and mental demands of the past job/occupation." *See* 1982 SSR LEXIS 27 at *10. However, it does not appear to provide detailed information about all appropriate job requirements. *See* 1982 SSR LEXIS 27 at *8; *see also* Dot for cafeteria worker, available at: http://www.occupationalinfo.org/31/311677014.html (last visited July 12, 2013).

Although the Court finds that the ALJ committed error regarding insufficient factual development of the requirement of the job of cafeteria worker as generally performed, the Court concludes that this error also is harmless, for reasons discussed below.

The third factual finding required by the relevant Social Security Ruling is "A finding of fact that the individual's RFC would permit a return to [] her past job or occupation." *See* 1982 SSR LEXIS 27 at *10. The ALJ complied with this requirement.

The vocational expert testified that an individual with hypothetical functional ability as plaintiff's RFC indicates, could perform the past relevant work as cafeteria worker (*see* Tr. 67-68). The vocational expert also testified that her opinion on this matter was consistent with the Dictionary of Occupational Titles ("DOT"), and that she had just

been reading from it that day (*see* Tr. 69). The DOT has been characterized by the Ninth Circuit as "the best source for how a job is generally performed." *See Pinto v. Massanari*, 249 F.3d 840, 845-46 (9th Cir. 2001) (citations omitted). The ALJ adopted the testimony of the vocational expert (*see* Tr. 33). For these reasons, the Court concludes that the ALJ made sufficient factual findings regarding whether or not plaintiff, given her RFC, could perform her past relevant work as a cafeteria worker as that occupation generally is performed.

Based on these reasons and the relevant record, the Court concludes that the ALJ's factual finding, based on the vocational expert's testimony, that plaintiff could have performed her past relevant work as a cafeteria worker as generally performed is a finding that is based on substantial evidence in the record as a whole.

Regarding the ALJ's failure to make explicit factual findings regarding the requirements for the job of cafeteria worker as generally performed, the Court concludes that this error is harmless. The best source for this information is the DOT, which the vocational expert testified was consistent with her opinion that a hypothetical individual with plaintiff's RFC could perform the job of cafeteria worker as that job generally is performed. *See* Dot for cafeteria worker, available at: http://www.occupationalinfo.org/31/311677014.html (last visited July 12, 2013). The ALJ adopted this testimony of the vocational expert and plaintiff has not identified any specific error in these findings or any contrary evidence to these findings other than plaintiff's subjective allegations that were rejected properly by the ALJ.

For the reasons stated, the Court concludes that the ALJ's error is harmless. The Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted); *see also* 28 U.S.C. § 2111. Although the ALJ failed to enumerate all of the relevant factual findings of the specific functional requirements for the job of cafeteria worker, given the testimony of the vocational expert, this error is harmless.

Finally, plaintiff contends that she suffered from limitations from carpal tunnel syndrome, but fails to direct the Court to any evidence documenting any limitation resulting from carpal tunnel syndrome other than plaintiff's subjective reports. Although plaintiff notes that she demonstrated a positive Phalen's sign in February, 2008, at this appointment, Dr. Mandeep Dhawan, M.D. indicated that plaintiff's Phalen's maneuver was "performed by having the patient maintain acute wrist flexion for 30 seconds. Her symptoms of numbness and tingling [worsened] so the test is positive" (*see* Tr. 345). This indication from Dr. Dhawan demonstrates that the positive Phalen's maneuver was based on plaintiff's subjective report of worsening symptoms (*see id.*). Dr. Dhawan's concluding assessment and plan were as follows:

> The patient has worsening carpal tunnel syndrome of the right hand. I am going to give her another prescription for a wrist brace. I am also going to send her for EMG and nerve conduction velocity studies. If it is positive, she might need surgery. Follow up as per the result.

(Tr. 345).

The Court notes that Dr. Dhawan did not opine that plaintiff suffered from any particular limitations, manipulative or otherwise, as a result of his diagnosis of carpal tunnel syndrome (*see id.*). The Court also notes that when asked at her April 13, 2010 hearing if she had any problems with her right hand, plaintiff testified "just a little" (*see* Tr. 53). She testified that if she lifted it very much then pain went into her neck (*see id.*). When questioned by her attorney, plaintiff indicated that her pain in her wrists "comes and goes" (*see* Tr. 61). Plaintiff testified that she suffered from pain "not too often, maybe once or twice a month" (*see id.*). Regarding how long the pain lasted when it occurred, she testified "not very often because I'm inclined not to do too much with it" (*see id.*).  Plaintiff did not testify as to any particular limitations related to her wrist other than to testify that "I cannot move my wrist very well" (*id.*).

Based on the relevant record, the Court does not find any error in the ALJ's decision related to plaintiff's alleged carpal tunnel syndrome.

## CONCLUSION

Based on the stated reasons, and the relevant record, the undersigned recommends that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **DEFENDANT** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on August 9, 2013, as noted in the caption.

Dated this 17th day of July, 2013.

J. Richard Creatura
United States Magistrate Judge